UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STAR FUNDING, INC.,

       Plaintiff,

    -against-

VAULT MINERALS, LLC, CHRIS J.
DELLINGES, and J. EDWARD MARTIN,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

15 Civ. 3026 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

In October 2013, Plaintiff Star Funding, Inc. and Defendant Vault Minerals, LLC ("Vault") entered into a Supply Agreement ("Agreement," Aff. of Jo-Ann Erhard ("Erhard Aff."), ECF No. 266, Ex. B) in which Plaintiff promised to purchase tires on behalf of Vault for Vault's resale. (Amended Report and Recommendation ("Report"), ECF No. 291, at 2.) Per the Agreement, Vault would reimburse Plaintiff for the purchase price of the tires and related expenses. (*Id.*; *see also* Agreement § 4(a)). Plaintiff also agreed to pay Vault a "margin" fee equal to 2.5% of total amount of any purchase price and expenses for each thirty-day period (or portion thereof) during which Plaintiff was not reimbursed by Vault. (Report at 2 n.1; Agreement § 4(a).) In April and June 2014, Plaintiff alleges that Tire Center, Inc. ("TCI"), a buyer of resale and wholesale tires, placed two orders for tires with Vault, each for $1,626,720. (Report at 2.) TCI claimed that the orders had been illegitimately placed by an unauthorized employee and refused to pay for the orders. (*Id.*) Plaintiff was eventually fully reimbursed for the amount of the April 2014 purchase order, but not for the amount of the June 2014 purchase order. (Erhard Aff., Ex. C (Statement of Amount Due); Defs. Ctrstmt. to Pl. 56.1 Stmt., ECF. No. 241, ¶ 7.) When Plaintiff did not receive the remaining balance for the tires, it notified Vault of its intention to resell them. (Decl. of Alex Spizz

1

("Spizz Decl."), ECF No. 251, ¶ 4.) The intended resale was initially stayed when Vault filed for bankruptcy in the Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") on October 14, 2015. (*Id.* ¶¶ 5–6.) However, Plaintiff eventually secured an order lifting the stay (Spizz Decl., Ex. 3) and sold twenty-eight of the tires to a third party, Leviathan Corporation ("Leviathan"), for $18,500 per tire, crediting $518,000 to Vault's account for the resold tires.[1] (Spizz Decl. ¶¶ 8–9.)

On April 17, 2015, Plaintiff brought suit against Defendants Vault, Chris J. Dellinges, and J. Edward Martin (collectively, "Defendants") to recover damages under the Agreement. (Compl., ECF No. 1.) On January 13, 2017, upon granting summary judgment for Plaintiff, this Court referred the case to Magistrate Judge Sarah Netburn for an inquest on damages. (*See* ECF No. 254.) Before this Court is Magistrate Judge Netburn's August 10, 2017 Amended Report and Recommendation, ("Report," ECF No. 291), recommending that Plaintiff be awarded damages of $3,105,789.88, plus post-judgment interest accruing at the appropriate federal rate. (*Id.* at 20.) The award of damages consists of four categories: (1) the amount spent on tires by Plaintiff on behalf of Vault in relation to the June 2014 transaction; (2) "margin" fees accrued during the period from Plaintiff's purchase of the tires until either Plaintiff is reimbursed or a judgment is entered; (3) attorneys' fees; and (4) various other costs incurred in connection with the June 2014 transaction. (*Id.* at 4, 20.) The award also accounts for amounts received by Plaintiff as a result of resale and other payments from the total amount of damages. (*Id.* at 4–5.)

In her Report, Magistrate Judge Netburn advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 21); *see*

---

[1] Under the Agreement, Plaintiff has a blanket lien over Vault's tires purchased under the Agreement and in its possession. (*See* Agreement § 7(b).) The twenty-eight tires resold were among thirty-six tires that Plaintiff was holding in storage in which Vault claimed an interest. (*See* Spizz Decl., Ex. 3, at 2–3.)

2

*also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Defendants filed timely objections, (Defs. Objs. to Report ("Defs. Objs."), ECF No. 294), and Plaintiff filed responses. (Pl. Resps., ECF No. 297.) Defendants' objections are overruled, and Magistrate Judge Netburn's recommendation is ADOPTED.

## I. LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1). Portions of the magistrate judge's report to which objections are properly filed are reviewed *de novo*. 28 U.S.C. § 636(b)(1). However, "a district judge will not consider new arguments raised in objection to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS), 2017 WL 3016942, at *4 (S.D.N.Y. July 17, 2017) (citing *Fisher v. O'Brien*, No. 09 Civ. 42 (CBA) (LB), 2010 WL 1286365, at *1 (E.D.N.Y. Mar. 30, 2010)). Portions of a magistrate judge's report to which no or improper objections have been made are reviewed for clear error. *Azkour*, 2017 WL 3016942, at *4. "[T]he objections are improper . . . [when] 'they are conclusory, general, or simply rehash or reiterate the original briefs to the magistrate judge' . . . ." *Id.* (quoting *Faucette v. Comm'r of Soc. Sec.*, No. 13 Civ. 4851 (RJS) (HBP), 2015 WL 5773565, at *2 (S.D.N.Y. Sept. 30, 2015)). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## II. DUTY TO MITIGATE DAMAGES

Magistrate Judge Netburn found that by selling the tires to a third party, Leviathan, Plaintiff satisfied its duty to mitigate. (Report at 8.) Defendants object that Plaintiff has not satisfied its

3

duty to mitigate because: (1) the resale price for the tires sold to Leviathan was commercially unreasonable; and (2) Plaintiff declined to accept the home owned by Jason Adkins ("Adkins"), a Vault affiliate and tire broker, as collateral for the June 2014 transaction. (Defs. Objs. at 1–2.) Defendants by objection challenge the commercial reasonableness of Plaintiff's mitigation efforts on the same grounds argued before Magistrate Judge Netburn. (Defs. Opp'n, ECF No. 282, at 5–8.) But even a review of Defendants' objections *de novo* demonstrates that they are without merit.

Under the Uniform Commercial Code ("UCC"), when a buyer breaches a contract for the sale of goods, the seller may resell the goods and recover the difference between the contract and resale price from the buyer, provided that the "method, manner, time, place and terms" of the resale are "commercially reasonable." N.Y. U.C.C. § 2-706(2); *see also BAII Banking Corp. v. Atlantic Richfield Co.*, No. 86 Civ. 6651 (SS), 1993 WL 403963 at *17 (S.D.N.Y. October 7, 1993), *aff'd*, 20 F.3d 103 (2d Cir. 1994)). If the sale is private (rather than public), "the seller must give the buyer reasonable notification of his intention to resell." N.Y. U.C.C. § 2-706(3).

Defendants object that the price of $18,500 per tire was not commercially reasonable because it was too low, citing deposition testimony from Adkins that: (1) he offered Vault a substantially higher price for the tires than that at which Plaintiff resold them to Leviathan and (2) he sold similar tires around the same time of the resale for a much higher price. (Defs. Objs. at 2.) Defendants' objections are unconvincing. Plaintiff's counsel sent Vault letters informing Vault of the prospective buyer, price, time, and place of each resale. (Report at 7; *see also* Spizz Decl. Exs. 1, 4.) Plaintiff disputes Defendants' contention that Adkins offered a higher price for the tires. (*See* Decl. of Martin Weingarten, ECF No. 287, ¶ 2.) Moreover, in lifting the automatic stay and approving the resale, the Bankruptcy Court noted that "Plaintiff presented evidence showing that . . . a unit price of $18,500 . . . was fair and reasonable," and that Plaintiff and Vault both

"acknowledge a severely depressed market." (Spizz Decl., Ex. 3 at 2–3 (footnotes omitted).) The Bankruptcy Court found that the market price of the tires ranged from $18,500 to $22,000 per tire. (*Id.*) A resale need not be at the highest price possible to meet the standard of commercial reasonableness. The price here satisfies that standard.

Defendants further object that Plaintiff's refusal to accept a mortgage on Adkins' home as collateral for the June 2014 transaction violates the duty to mitigate damages. (Defs. Objs. at 3.) However, as the Report correctly found, the mere fact that Plaintiff refused to take Adkins' home as collateral is irrelevant to whether the resale of the tires at a price of $18,500 was commercially unreasonable. (*See* Report at 7 n.7.)

### III. MARGIN FEES

Defendants object to the amount of "margin" fees that the Report recommends be awarded to Plaintiff, pursuant to § 4(a) of the Agreement, asserting that such fees are a violation of New York's criminal usury laws. (Defs. Objs. at 4–5.) Even upon *de novo* review, this Court finds that Plaintiff is entitled to an award of "margin" fees accrued during the period from Plaintiff's purchase of the tires until either Plaintiff is reimbursed or a judgment is entered.

Under New York law, a loan is criminally usurious if the interest rate charged exceeds 25% per annum. *See* N.Y. Penal Law § 190.40. However, this usury provision does not apply when the loan amount at issue is equal to or greater than $2.5 million. N.Y. Gen. Oblig. Law § 5-501(6)(b); *see also NML Capital v. Republic of Argentina*, 621 F.3d 230, 238 (2d Cir. 2010). The loan amount is calculated based upon the amount "the lender or lenders *have agreed to advance or make pursuant to such agreement* on the terms and conditions provided therein." N.Y. Gen. Oblig. Law § 5-501(6)(b) (emphasis added). Accordingly, courts consider the amount agreed upon between corporations, not the actual loan amount, in determining the applicability of criminal

5

usury laws. *See, e.g., Tides Edge Corp. v. Cent. Federal Sav., F.S.B.*, 151 A.D.2d 741, 742 (2d Dep't 1989) (considering "the amount that respondent agreed to advance" in finding that a transaction was not covered by criminal usury laws).

Here, as the Report notes, the "margin" fees paid under the Supply Agreement operated as interest, because Plaintiff charged Vault a monthly percentage of the amount Vault owed. (*See* Report at 9 n.9.) Defendants assert that the margin fee rate was, in effect, an interest rate of 30% per annum, and that Plaintiff should not be entitled to any award of interest because the "loan" amount, under the Agreement, is $1,626,720—the amount that Plaintiff actually spent purchasing tires on Vault's behalf that Vault failed to repay. (Defs. Opp'n. at 2.) Thus, Defendants argue that the loan amount is below the $2.5 million threshold and, as such, an award of interest at a rate equal to the effective margin fee rate violates New York Penal Law. (*Id.* at 2–3.) Plaintiff argues that the "loan" amount is the total value of the purchases that Vault agreed to make pursuant to the Agreement—at least $7.5 million in the first year of the Agreement and $10 million in each subsequent year. (Pl. Resps. at 5.)

Here, Magistrate Judge Netburn properly concluded that for purposes of criminal usury laws, the relevant "loan" amount in this case was the amount agreed to by the parties as set forth in the Agreement, not the actual loan amount. (Report at 10–11.) Defendants also argue that this Court should "not apply the $2.5 million threshold" because the loans at issue were backed by personal guarantees. (Defs. Objs. at 4.) However, they have not cited any case in which a court found the mere fact that a loan was backed by a personal guarantee provides a basis to disregard

6

the statutory threshold.² Accordingly, Magistrate Judge Netburn's recommendation for an award of "margin" fees in favor of Plaintiff is ADOPTED.

## IV. AWARD OF ATTORNEYS' FEES

Defendants object to the amount of attorneys' fees and costs that the Report recommends be awarded to Plaintiff on the grounds that some of the fees were incurred as a result of Plaintiff's claims against a third party. (Defs. Objs. at 5.) Because Defendants had an opportunity to raise this objection when Plaintiff submitted its claim for attorneys' fees and costs to Magistrate Judge Netburn and did not do so, (see Defs. Opp'n), this Court need not consider this objection. *Azkour*, 2017 WL 3016942, at *4. But, again, even upon *de novo* review, the objection fails on the merits.

Defendants argue that the amount of the fee award is unreasonable because a "voluminous amount of work and fees" are attributable to Plaintiff's litigation against TCI, rather than Vault.³ (Defs. Objs. at 6.) However, the broad scope of the indemnification clause in the Agreement forecloses such an argument. Under the terms of the Agreement, Vault agreed to indemnify Plaintiff for, among other things, "expenses (including reasonable attorneys' fees and

---

² In *Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013), the case upon which Defendants chiefly rely, though the loans at issue appeared, on their face, to have an interest rate of 16%, the court found that attorneys' fees and stock transactions paid for by the defendants could be considered in calculating the interest rate because they were in effect, "disguised loan" payments. *Id.* at 339–40. Here, Defendants do not allege that Plaintiffs attempted to hide the amount of the "loan" that the parties agreed upon; they simply allege that Plaintiffs failed to pay all of the agreed upon amount. The only other case cited by Defendants, *Diller v. Schick*, No. 96 Civ. 4140 (AGS), 1998 WL 91099 (S.D.N.Y. Mar. 2, 1998), is also inapposite. In that case, the plaintiff asserted that the defendants were estopped from raising a defense of usury because they had "induced plaintiff's reliance on the proposed transaction by assuring him that its terms were not usurious." *Id.* at *2. But the court did not directly address the issue of whether, if defendants were found not to have induced plaintiff's reliance, defendants could avoid their obligations under the personal guarantees on the grounds of usury.

³ Though Defendants assert that "the vast majority" of Plaintiff's attorneys' fees and costs are attributable to Plaintiff's litigation against TCI (Defs. Objs. at 5), Defendants have not identified any specific entries in the invoices submitted by Plaintiffs attributable to such litigation, or otherwise articulated the amount of Plaintiff's claimed fees and costs that they believe to be unreasonable.

disbursements) . . . arising out of, resulting from, or in any manner connected with, the execution, delivery, and performance of each of the Supplier Documents, the Transactions, and any and all other transactions related hereto or thereto or consummated in connection herewith or therewith." (Agreement § 15(b)). Because Plaintiff's claims against TCI arose from a transaction with TCI that Plaintiff undertook on behalf of Vault, Plaintiff's attorneys' fees and costs in litigating its claims against TCI are within the scope of the indemnification provision. Magistrate Judge Netburn's award of attorneys' fees to Plaintiff is ADOPTED.

## V. CONCLUSION

Magistrate Judge Netburn's Recommendation to award damages is ADOPTED in full. The Clerk of Court is directed to close the motion at ECF No. 298, and this case, accordingly.

Dated: New York, New York
March 26, 2018

MAR 2 8 2018

SO ORDERED.

George B. Daniels
GEORGE B. DANIELS
United States District Judge

8